# **<u>Exhibit A</u>**

## SUMMONS

| | | |
|---|---|---|
| Attorney(s) | **Kwame L.A. Dougan, Esq.** | |
| | **Scotch & Palm Private Client Law** | **Superior Court of** |
| Office Address | **Group, LLC** | **New Jersey** |
| | 252 Nassau St. | |
| Town, State, Zip Code | Princeton, NJ 08540 | |
| Telephone Number | E-Mail: kwame.dougan@scotchpalm.com | Burlington    COUNTY |
| Attorney(s) for Plaintiff | Phone: (917) 737-9920 | Civil    DIVISION |

Docket No: L 001590-21

Jane Doe One, Jane Doe Two, and others similarly situated, , ,

Plaintiff(s)

**CIVIL ACTION
SUMMONS**

Vs.

DREAMWEAR INC, S JOHN AND/OR JANE DOE, XYZ
CORPORATIONS, ELLIOT FRANCO, JOSEPH FRANCO

Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153 deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153 deptyclerklawref.pdf.

Clerk of the Superior Court

DATED:    July 28, 2021

Name of Defendant to Be Served:

Address of Defendant to Be Served:

JOSEPH FRANCO
:183 MADISON AVE, 10TH FL, NEW
YORK, NY, United States, 10016

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

Kwame L.A. Dougan, Esq.
**Scotch & Palm Private Client Law Group, LLC**
252 Nassau St.
Princeton, NJ 08540
E-Mail: kwame.dougan@scotchpalm.com
Phone: (917) 737-9920
**Attorney(s) for Plaintiffs**

| | |
|---|---|
| Jane Doe 1, Individually and on Behalf of All Others Similarly Situated, Jane Doe 2, Individually and on Behalf of All Others Similarly Situated.<br><br>    Plaintiff(s),<br><br>v.<br><br>Dreamwear Inc., Joseph Franco, Elliot Franco, JOHN OR JANE DOE 1 THROUGH 100, fictitious names being natural persons at present unidentified, XYZ CORPORATIONS 1 THROUGH 100, fictitious names being corporations at present unidentified, ABC ENTITIES 1 THROUGH 100, fictitious names being commercial entities at present unidentified<br>    Defendant(s) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BURLINGTON TOWNSHIP DOCKET NO.<br><br>CIVIL ACTION<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF NEW JERSEY AND FEDERAL CIVIL RIGHTS ACTS<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

## NATURE OF THE ACTION

1. Plaintiff(s) are black women who have suffered the indignities of sexual harassment, racial slurs, and diminished opportunities for advancement because Defendants foster a hostile work environment and enforce a de facto racial hierarchy among its staff.

2. In its New York office, Defendant Dream wear has segregated its Black/African-American employees from the majority of non-black staff.

3. Among its almost 200 employees, the few black women employed possess exceptional

## COMPLAINT

qualifications and perform well as reflected in annual reviews. Despite these facts, black women neatly congregate lower rungs of Dream wear's organizational hierarchy regardless or tenure, experience, or demonstrated ability.

4.  Its leadership disregards credible claims of sexual harassment and racially motivated misconduct.

5.  Its response has been to enact policies and procedures designed to suppress reports of misconduct, harassment and retaliation.

6.  Dreamwear's owners, Elliot and Joseph Franco, have allowed unchecked an environment hostile to black women within Defendants' workplace, causing Plaintiff(s) emotional distress, violating their civil rights, and causing irreversible economic harm.

7.  Plaintiff seeks injunctive and declarative relief, damages, including economic, compensatory, liquidated, and punitive damages.

## THE PARTIES

1.  Plaintiffs[1] are African American females who are or by defendants for at least two years and alleges:

2.  Defendant Dreamwear Inc. is a multinational fashion wear enterprise selling products and producing fashionwear for corporate clients including, Amazon, Macys, and Target, and employees working remotely and globally, with headquarters at 183 Madison Ave 10th Fl. New York, New York, 10016.

3.  Defendant Joseph Franco is Founder and Principal of DREAMWEAR INC.

_____

[1] Plaintiffs are filing without disclosing their identities' yet because Plaintiffs reveal highly private and personal information about plaintiffs, some of whom remain employed by defendant.

## COMPLAINT

4. Defendant Elliot Franco is Founder and Principal of DREAMWEAR INC.

5. "XYZ Corporations" 1-10 (Names Fictitious); and "John and/or Jane Does" (Names Fictitious) (collectively "Defendants").

### *Venue*

1. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiffs have satisfied all prerequisites to bringing these claims.

2. Venue is appropriate in this court since Plaintiffs reside in New Jersey, and at least one resides in Burlington Township, New Jersey.

3. Corporate Defendant does business in New Jersey and some of the causes of action occurred in New Jersey.

4. Federal law claims do not raise novel or complex issues.

## FACTUAL ALLEGATIONS

*Defendants denied Black African American women promotions, wages, or transfers at rates commensurate to their experience and relative to similarly or less qualified people.*

6. Plaintiffs are Black women employed by Defendants.

7. Over a period of at least two years and continuing to the present, defendants oversaw the creation and maintenance of a segregated and hostile work environment.

8. Defendants applied ad hoc and discretionary practices and policies.

9. Defendant's policies and procedures are the proximate cause of black employees earning lower wages than non-black staff despite experience and qualifications.

## COMPLAINT

10.  Defendant's policies and procedures have caused Black women to earn fewer bonuses, promotions and the opportunities to rotate into well-regarded and better compensated roles relative to non-black counterparts.

11.  Defendant's policies and procedures are arbitrarily applied to the detriment of black women by non-black individuals in positions of power.

12.  Defendant's practices reward supervisors, management, directors and human resources personnel that negligently or intentionally fail to investigate allegations by black women subjected to conduct violative of federal and state constitutional civil rights.

13.  Defendants foster and tolerate a culture that permits racially offensive jokes.

14.  Defendants have failed to diligently investigate allegations of sexual harassment, resulting in an under-reporting of harassment.

**Defendants hire diverse staff and segregate to the lowest rungs.**
15.  On Information and Belief, Defendant has not hired or promoted *one black Designer on any Team in the company.*

16.  Defendants retaliate against Plaintiffs who have reported harassment and discriminatory conduct by denying elevation.

**17.** Defendants routinely hire and promote non-black and male individuals less qualified than Plaintiffs.

18.  Defendants have denied Plaintiffs opportunities for which they were qualified.

19.  Defendant filled those roles with less qualified men and non-black staff.

20.  As recently as winter 2020, Jane Doe 3, who, despite earning positive performance reviews, applied for a position to join a team she had asked about since joining the company.

21.  Jane Doe 3 was told that as soon as a role opened they would offer her the opportunity.

22.  When Defendants later sought applicants for the team, they summarily dismissed Jane Doe

**COMPLAINT**

3's application despite having sufficient qualifications.

23.    After the rejection, Defendant(s) continued to seek applications from less-qualified

persons.

24. Only after Plaintiff's counsel sent a notice to Defendant(s) that it was investigating its

conduct, Defendants belatedly offered one party among the Plaintiff class a pseudo-

promotion similar to a role she had been denied only months early.

25.

26. Defendants subsequently terminated a Director who took part in discriminatory conduct

described, making her testimony less accessible.

27. Because of Defendant's actions, Plaintiffs have used vacation days to seek mental health

professionals.

28. They compelled Jane Doe 3 to escape the hostile treatment by separating from the

Company.

29. After expressing her intent to separate, Defendant sent disparaging comments in written

form to staff and third-parties.

30.  Plaintiff's legal counsel notified Defendant(s) that it was investigating Defendant(s)'s

action.

31. Plaintiffs complained about the defendants' activities internally because they violated Public

Policy of this State.

32. Plaintiffs suffered adverse actions for making such complaints.

33. Upon information and belief, of almost 200 women, a disproportionate number of black

women remain down among the lowest rungs of the company's organizational ladder, and

are regularly subject to racially suggestive pejorative comments from men and women in

supervisory positions or by management.

**COMPLAINT**

*Defendants do not properly train or supervise management and staff about sexual harassment, racial discrimination, or have a formal process to investigate allegations of same.*

34. Plaintiffs have reported unlawful conduct.

35. Defendants have failed to investigate Plaintiffs' complaints.

36. Defendants refused to act in response to allegations of harassment, finding no evidence of harassment because the reported conduct was not "criminal" in nature.

37. Plaintiffs have received different treatment than their white women counterparts in the following ways:

    38. Plaintiffs have been subject to the de facto segregated team of "colorists".

    39. Supervisors berate and yell at Plaintiffs during meetings.

    40. During meetings, supervisors routinely draw women of color aside, into corners and hallways, accosting them, causing fear and panic among the mostly female staff.

    41. During virtual meetings, Plaintiffs are disciplined or criticized for choosing not to show their face on the screen despite expressing discomfort, but white employees are not required to do the same nor are they criticized.

    42. Supervisors ask Plaintiffs to pipe down, and be quiet, or to shut up.

43. John Doe 1 targeted Plaintiffs about their voices, alleging to managers that he was bothered by "voice distraction", which appears to arise only from Plaintiffs.

44. John Doe 1 falsely claimed, "that he could hear [Plaintiffs] talking all day", even on days where Plaintiffs were not working in the same area.

45. John Doe 1 does not complain about "voice distraction" when white employees are speaking loudly, even when discussing personal matters, e.g., about marriage proposals, and birthday celebrations of non-black co-workers.

**COMPLAINT**

### *Management disparages black women as Aunt Jemima.*

46. During company functions, white staffers have compared black women to "Aunt Jemima" a severely hurtful pejorative, causing severe distress and discomfort in the workplace.

47. Friends of Principals, Elliot and Joseph Franco, have at company functions complained about being unable to "make black jokes anymore", causing distress to black employees and embarrassing them in front of colleagues.

48. On Information and Belief, witnesses to these incidents did not report this conduct, because of fear of retaliation.

49. Defendants have filed formal complaints about a continued pattern of racially motivated disparate treatment and discipline inflicted by Defendant HR and supervisors on Plaintiffs.

50.   Plaintiffs have remained under the direct supervision of individuals whose conduct is described herein.

### *Defendants Retaliate by abusing discretion in violation of written policies and procedures*

51. Plaintiffs have expressed to management concern about being asked to take on additional duties beyond stated, contractual roles, and without additional credit, pay, or acknowledgement.

52. Plaintiffs have inconsistent work schedules, and last minute or ad hoc schedule changes while their non-black counterparts such indignity.

53. HR directors have used their discretion to discipline Plaintiffs as retaliation for expressing their concerns about disparate treatment.

54. White colleagues complain about being overburdened or working beyond scope without fear of reprimand.

55. Jane Doe 2 was offended by a coworker, and her supervisor demanded that she take a better attitude and start greeting the offensive co-worker. The same supervisor did not require the

**COMPLAINT**

offending co-worker to feign civility towards Jane Doe 2.

56. Jane Doe 2 was reprimanded for expressing distress at such a command and was

subsequently denied a promotion despite a positive work performance review.

### *Defendants foster a culture of Covert Racial Prejudice*

57. On Information and Belief, employees of color are de facto segregated; working roles that

prevent them from client or front-facing meetings.

58. Supervisors routinely make provocative and prejudicial statements about other employees.

59. In one or instance, supervisory staff asked a Hispanic coworker was asked why she rides

elevators with some Asian employees.

60. Plaintiffs have been prevented from working at the same time or sitting in the same areas

after reporting derogatory comments.

61. Defendants have targeted Plaintiffs by developing schedules that limit interaction with each

other, preventing prospective class of complainants from comparing notes.

### *After #me-too, Defendants tried to protect management instead of its women employees*

62. Defendants after revelations arising out of the #me-too era inserted compulsory arbitration

clause that operates as a de facto and illegal is a non-disclosure agreement, prohibits

employees from publicly speaking out.

63. In or around 2018, Defendants retaliated against individuals who filed such complaints by

enacting a companywide de facto gag clause through compulsory Confidential Arbitration

Agreements.

**COMPLAINT**

64.  Defendants' handbook says that an applicant or employee witnesses or otherwise becomes aware of sexual harassment or unlawful discrimination, has an obligation to report the behavior, even if it was not directed at the person reporting behavior.

65. It further provides that supervisors or managers who fail to report sexual harassment will be subject to discipline.

66. Plaintiffs have repeatedly followed the company's handbooks, escalated harassment and discrimination through the company's Internal Processes, by making verbal or written complaints.

67. On Information and Belief, Defendants have not disciplined HR or management who failed to report witnessing unlawful treatment.

68. Plaintiffs were required to sign these agreements as a condition of continuing employment.

69. Plaintiffs took their concerns to the New York Human Rights Division in 2019, but its counsel refused to take the case, on information and belief, due to the legal complexity of the arbitration agreement, and the risk of concerned about raising such allegations for fear of retribution.

70. Defendants in 2020 asked Plaintiff(s) to sign a document stating that they had not complained about discrimination and harassment and had suffered no harassment or retaliation, facts be damned.

71. Plaintiff(s) refused; Plaintiff(s) were targeted for severe criticism, ranging from supervisors claiming that one Plaintiff(s) had "an attitude," or lacked collaborative spirit because she expressed a common

72. Plaintiffs did not sign such agreements and suffered adverse consequences.

*COVID-19 pandemic exposed Dreamwear's racial hierarchy from a safe distance.*

73. In 2020, Defendants' asked Plaintiffs to work remotely, but did not reimburse them for use

**COMPLAINT**

of their own phones, laptops or other expenses.

74. Plaintiff(s) was singled out for criticism during virtual meetings for temporarily pausing her video feed, even for valid reasons, including: an inadequate internet connection (which was not subsidized by her employer), privacy concerns, improper comments about her facial expressions or aesthetics and political statements visible in her home environment, and other matters that would be kindle in an already toxic environment.

75. When staff was asked to return, Plaintiffs were required to come into the office despite lax COVID-19 safety protocols.

***Employer failed to comply with the "minimum requirements" to limit Plaintiff(s) exposure to potentially infectious employees***

76. Employers returning employees to offices must develop a written Safety Plan outlining how its workplace will prevent the spread of COVID-19.

77. No office-based work activities can **operate without meeting the following minimum State standards,** as well as applicable federal requirements, including but not limited to such minimum standards of the Americans with Disabilities Act (ADA), Centers for Disease Control and Prevention (CDC), Environmental Protection Agency (EPA).

78. Plaintiffs were scared to return onsite after learning employees tested positive for COVID-19 because management failed to take mandated precautions.

79.  Plaintiff(s) feared catching the virus on one hand, and fear facing retribution for expressing concerns because employer -- the "Responsible Party"--failed to comply with the guidelines:

(1) Physical Distancing -- *Staff routinely exceeded in-person limits and employer did not take sufficient remedial actions*

(2) Providing personal protective equipment when required for safety and health; and, training employees on the use of the same – *Defendants did not provide staff with training or PPE.*

**COMPLAINT**

(3) Defendants were supposed to institute face covering requirements, post signs throughout the office, consistent with DOH COVID-19 signage.

(4) Defendants should have designated an egress for employees leaving their shifts and a separate ingress for employees starting their shifts) and movements (e.g. employees should remain near their workstations as often as possible). They did not.

80. Defendants did not sufficient maintain logs that include the date, time, and scope of cleaning and disinfection.

81. Defendants, as "Responsible Party" failed to comply with state and federal communication and disclosure guidelines. On information and belief, Defendants failed to:

   i.   "develop a communications plan for employees and visitors, and customers that includes applicable instructions, training, signage, and a consistent means to provide employees with information. "

   ii.   immediately notify the state and local health department about the case if test results are positive for COVID-19.

   iii.   Refer to DOH's "Interim Guidance for Public and Private Employees Returning to Work Following COVID-19 Infection or Exposure" regarding protocols and policies for employees seeking to return to work after a suspected or confirmed case of COVID-19 or after the employee had close or proximate contact with a person with COVID-19.

   iv.   Designate a central point of contact, which may vary by activity, location, shift or day, responsible for receiving and attesting to having reviewed all employees' questionnaires, with such contact also identified as the party for employees and visitors to inform if they later are experiencing COVID-19-related symptoms, as noted on the questionnaire.

**COMPLAINT**

    v.    Designate a site safety monitor whose responsibilities include continuous compliance with all aspects of the site safety plan.

    vi.    Maintain a log of every person, including employees and visitors, who may have close or proximate contact with other individuals at the worksite or area; excluding deliveries that are performed with appropriate PPE or through contactless means

82. Despite the above-noted reports of discriminatory practices, and Plaintiff's repeated attempts to resolve without resorting to costly litigation, Defendants have continued to deny, dismiss, or otherwise resist efforts to redress this conduct.

## COUNT I

### *Defendants Violated the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -42 by discriminating against Plaintiffs because they were black.*

83. Plaintiffs incorporate by reference each of the above paragraphs as if set forth herein at length.

84. New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., "prohibits discrimination against a person in the terms, conditions or privileges of employment on the basis of the person's gender, race, age and handicap and reprisals for complaints of discrimination and public policy matters..."

85. Defendants individually, jointly and conspiratorially engaged in acts which were negligent, recklessly intentional and malicious.

86. Plaintiffs suffered disparate treatment, disparate impact, discriminatory intent, a pattern and practice of discrimination, hostile work environment and evidence of hostility by employers or agents.

87. Non-black counterparts received preferential treatment relative to Plaintiff(s), despite offering up similar grievances.

## COMPLAINT

88.   Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

89.   At all times, plaintiffs reported to Defendants.

90.   Each of these actions, among others, affected plaintiffs ability to work comfortably.

91.   Defendants caused Plaintiffs discomfort accompanied by anxiety because they were black women.

92.   As a direct foreseeable and proximate result of defendants discriminatory acts, Plaintiff(s) has suffered irreversible losses in earnings, job benefits and employability.

**COUNT II**

93.   Plaintiffs incorporates by reference each of the above paragraphs as if set forth herein at length.

94.   To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that:

(1) she was engaged in a protected activity known to the Defendant(s); (2) she was subjected to an adverse employment action by the defendant; and (3) there was a causal link between the two.

95.   Plaintiff bears a "modest" evidentiary burden of showing that retaliation "could be a reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).

96.   After the plaintiff establishes a prima facie claim of retaliation, the burden shifts to the defendant to "'articulate a legitimate, non-retaliatory reason for the decision.'" Young v. Hobart W. Grp., 385 N.J. Super. 448, 465 (App. Div. 2005) (quoting Romano, supra, 284 N.J. Super. at 549). Thereafter, the plaintiff must prove that the defendant had a discriminatory motive, and that its proffered reason for the adverse employment action was merely a pretext for unlawful retaliation. Romano, supra, 284 N.J. Super. at 549.

**COMPLAINT**

97. In this case, plaintiffs presented evidence that, beginning they filed complaints with Dreamwear, alleged being subject to unlawful discrimination in the terms or conditions of their employment, which is a protected activity under the NJLAD. N.J.S.A. 10:5-12(a) and (d).

98. In addition, Plaintiff(s) established that they were subjected to an adverse employment action when they were subsequently required to sign documents that falsely claimed that they had suffered no harassment in 2020, and were denied promotions, transfers and bonuses earned or which they qualified.

## COUNT III

### *Retaliation via compulsory arbitration*

99. Plaintiffs incorporates by reference each of the above paragraphs as if set forth herein at length.

100. An agreement to waive statutory remedies must "be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." Red Bank Reg'l Educ. Ass'n, supra, 78 N.J. at 140.

101. Defendants enacted an unconscionable and inapplicable arbitration agreement to muzzle Plaintiffs.

## COUNT IV –

### *Violation of CEPA*

102. Plaintiff's CEPA claim is based on N.J.S.A. 34:19-3a(1), which provides that An employer shall not take any retaliatory action against an employee because the employee does any of the following:

## COMPLAINT

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee....

Plaintiff's CEPA claim is also based on N.J.S.A. 34:19-3c(1) and -3c(3), which provides that an employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; [or]

. . . .

(3) is incompatible with a clear mandate of public policy concerning public health, safety or welfare or protection of the environment.

103. Here, Plaintiff(s) has identified policies which affected the public health, safety or welfare, which the employer has allegedly violated, particularly relating to COVID-19.

104. Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations, and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics."

MacDougall v. Weichert, 144 N.J. 380, 391 (1996);

**COMPLAINT**

## COUNT V

### *Hostile work environment*
### *Plaintiff incorporates by reference each of the above paragraphs as if set forth herein at length.*

105.  "[O]ne incident of harassing conduct can create a hostile work environment," so long as the incident was "severe or pervasive." The applicable standard is that of a reasonable person in the plaintiff's position.

106.  Here, Plaintiffs outlined a series of covert and severe discriminatory conduct, including references to Aunt Jemima.

## COUNT VI

### New Jersey Constitution, Article 1, Paragraphs 1, 5, 6 and 18,

107.  Plaintiff incorporates by reference each of the above paragraphs as if set forth herein at length.

108.  Defendants intentionally and recklessly inflicted emotional distress in violation of defendants' New Jersey Constitutional rights.

109.  At all relevant times, Defendant(s) regularly employed five or more persons, bringing the defendant employer within the provisions of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

110.  Defendants violated plaintiffs' rights under the New Jersey Constitution, Article 1, Paragraphs 1, 5, 6 and 18, which prohibits employers from discriminating against employees on the basis of race, gender, age and freedom of speech and freedom from retaliation for…complaining and grieving of matters against the public policy of this State.

111.  Upon information and belief, defendants possessed such discriminatory' intent in a pattern and practice of discrimination and evidence of hostility by employers or agents.

112.  Defendants' treatment of Plaintiff(s) was pretext for discrimination.

## COMPLAINT

113. Plaintiff's complaints and objections were determining factors in defendant employer's decision to deny each Jane Doe equal terms of employment as Defendants offered non-black employees.

114. Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. And violation of the Public Policy of the New Jersey Constitution, Article 1, Paragraphs 1, 5, 6, 18 and 19.

## COUNT VII

### Breach of Good Faith and Fair Dealing

115. Plaintiffs incorporate by reference each of the above paragraphs as if set forth herein at length.

116. Defendants' policies for promotion, transfer and equal treatment became policies upon which Plaintiff(s) relied to their detriment.

117. Defendants' breach of the policies constituted breach of Plaintiff(s)'s implied covenant and of good faith and fair dealing.

118. As a direct, foreseeable and proximate result of defendant's discriminatory acts, plaintiffs have suffered and continues to suffer substantial losses in earnings and job benefits and have suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort.

119. Defendants committed the acts described in this complaint oppressively, willfully and maliciously, entitling to an award of punitive damages against defendants.

120. Defendants' actions breached the implied covenant of good faith.

**COMPLAINT**

## COUNT VIII
### Retaliation

121.   Plaintiff incorporates by reference each of the above paragraphs as if set forth herein at length.

122.   Upon information and belief, defendants retaliated against Plaintiff(s) when she made several complaints of discrimination internally and externally.

123.   Plaintiff filed a report with a state-level Human Rights commission in 2019- 2020, engaged legal counsel to who contacted Defendants to commence an investigation and to preserve all electronic data relevant to a potential suit, and have filed analogous complaints with federal regulatory agencies.

124.   As a result, Defendants have increased the level of hostilities and disparate treatment against Plaintiff(s).

125.   Defendants have escalated the harassment, reassignment, denials, and lack of promotion opportunity against Plaintiff(s).

## COUNT IX

### DEFAMATION

126.   Plaintiff(s) incorporates by reference each of the above paragraphs as if set forth herein at length.

127.   Defendants defamed Plaintiffs by speaking and publishing false statements about her conduct after she separated employment.

## COUNT X

### 42 U.S.C. § 1983
### COMPLAINT

128.   § 1983 provides that "Every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,

or causes to be subjected, any citizen of the US or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

or other proper proceeding for redress…"

129.   Dreamwear's arbitration clause interferes and/or hinders employees from exercising their

right to sue Dreamwear for claims of unlawful discrimination. As stated in § 1981, "[a]ll

persons within the jurisdiction of the United States shall have the same right in every

State… to sue….".

130.

**Count XI**
**42 U.S.C. § 2000e-2 Unlawful Employment Practices**

131.   Plaintiff(s) incorporates by reference each of the above paragraphs as if set forth herein at

length.

132.   It shall be an unlawful employment practice for an employer to "fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."

133.   An unlawful employment practice based on disparate impact is established only if – (i) a

complaining party demonstrates that a respondent uses a particular employment practice that

causes a disparate impact on the basis of race, color, religion, sex, or national origin and the

respondent fails to demonstrate that the challenged practice is job related for the position in

question and consistent with business necessity.

**COMPLAINT**

134.   As a direct, foreseeable and proximate result of defendants' discriminatory acts,

Plaintiff(s) has suffered and continues to suffer substantial losses in earnings and job

benefits and has suffered and continues to suffer humiliation, embarrassment, mental and

emotional distress and discomfort.

135.   Defendants committed the acts described in this complaint oppressively, willfully and

maliciously, entitling Plaintiff(s) to an award of punitive damages against defendants.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1)   Declare Defendants' conduct complained of herein to be in violation of Plaintiff's civil Rights.

2)   Damages in an amount greater than $75,000.00;

3)   Compensatory damages, both past and future, including lost wages, benefits and emotional

distress damages in an amount to be determined and proven at trial;

4)   Consequential damages in an amount to be determined and proven at trial.

5)   Emotional distress or "special damages";

6)   Punitive damages;

7)   Reasonable attorneys' fee and all expenses and costs of this action; and

8)   Such other relief and further relief as this Court deems necessary, just and proper.

**COMPLAINT**

**Exhibit A**

**COMPLAINT**

Jane Doe  One, Jane Doe Two, et. Al.

_____

_____
                      Plaintiff(s),

         v.

_____
DREAMWEAR INC C et. al.
_____
                 Defendant(s).

Superior Court of New Jersey

_____ Civil _____ Division

_____ Burlington __ County

Docket Number _____

             BUR L 001590-2

             **Civil Action**

       **Order to Correct Data**

**THIS MATTER having been opened by:** (select one)

☐ the Court, *sua sponte*,

X ☐ Scotch & Palm Private Client Law Group _____ , attorney for  Plaintiff(s) _____,

for an Order to Correct the  Name of Plaintiff, Confidential Identifiers _____ entered into eCourts incorrectly
upon the filing of a Complaint _____ on _____ and bearing Transaction
ID LCV20211737726 _____ , which  Has a deficiency name and contains identifiers  ; and for other good cause
appearing;

**IT IS on this**   28   **day of**   July   ____, **2021**   ;

**ORDERED** that the  Caption _____ ,

"  Jane Does 1-10 _____ " be replaced with

"   See below and attached _____ " in the appropriate Electronic Court System(s), and

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon all parties who have not been
electronically served through an approved Electronic Court System pursuant to *Rule* 1:32-2A,
nor served personally in court.

Jane Doe 1, Individually and on Behalf of All Others
Similarly Situated, Jane Doe 2, Individually and on Behalf of
All Others Similarly Situated (plaintiffs)

                         s/ _____

                                    (Judge name and title)

JOHN OR JANE DOE
1 THROUGH 100, fictitious names being
natural persons at present unidentified, XYZ
CORPORATIONS 1 THROUGH 100,
fictitious names being corporations at present
unidentified, ABC ENTITIES 1 THROUGH
100, fictitious names being commercial
entities at present unidentified (defendants)

BURLINGTON COUNTY
SUPERIOR COURT
49 RANCOCAS ROAD
MT HOLLY          NJ 08060
                                       TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (609) 288-9500
COURT HOURS  8:30 AM - 4:30 PM

                         DATE:   JULY 23, 2021
                         RE:     DOE JANE  VS DREAMWEAR INC
                         DOCKET: BUR L -001590 21

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

    DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON SANDER D. FRIEDMAN

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (609) 288-9500.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                              ATT: KWAME L. DOUGAN
                              SCOTCH & PALM PRIVATE CLIENT L
                              252 NASSAU ST.
                              PRINCETON        NJ 08540

ECOURTS