# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Fedeline Desire, Tiffany Robertson individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>DREAMWEAR INC. et al.,<br>Defendant(s) | Civil Action No.1:21-cv-161178-NLH SAK<br><br>AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF NEW JERSEY AND FEDERAL CIVIL RIGHTS ACTS<br><br>JURY TRIAL DEMANDED |

**Kwame L.A. Dougan, Esq.**

**Scotch & Palm Private Client Law Group, LLC**

252 Nassau St.

Princeton, NJ 08540

E-Mail: kwame.dougan@scotchpalm.com

Phone:  (917) 737-9920

**Attorney(s) for Plaintiffs**

**FIRST AMENDED COMPLAINT**

## NATURE OF THE ACTION

This is an action under the Civil Rights Act of 1866 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on race bias against plaintiffs who are African-American; under the Equal Pay Act of 1963 to correct unlawful employment compensation practices based on gender bias; under 42 U.S.C. §2000e-2 for Unlawful Employment Practices, by unlawfully discriminating  against Plaintiffs because of their race, nationality, and gender, and retaliating against them for alleging unlawful discrimination by taking adverse employment action  and fostering a hostile work environment and causing the constructive termination of the Named Plaintiff .

## JURISDICTION AND VENUE

This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331 and 1343, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), specifically, Section 102 thereof, 42 U.S.C. §1981a. This Court has jurisdiction to adjudicate Plaintiff's state law claim pursuant to 28 U.S.C. §1367. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the District of New Jersey.

## THE PARTIES

Plaintiffs Fredeline Desire and Tiffany Robertson ("Named Plaintiffs") are African-American residents of this judicial district. At all relevant times Defendant Dreamwear Company has at least 15 employees, and has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. §1981. Defendant Dreamwear Inc. is a multinational fashion wear enterprise selling products and producing fashionwear for corporate clients including, Amazon, Macys, and Target, and employees working remotely and globally, with headquarters at 183 Madison Ave 10th Fl. New York, New York, 10016.

Defendant Joseph Franco is Founder and Principal of DREAMWEAR INC. Defendant Elliot Franco is Founder and Principal of DREAMWEAR INC. "XYZ Corporations" 1-10 (Names Fictitious); and "John and/or Jane Does" (Names Fictitious) (collectively "Defendants").

## AMENDED

**FACTUAL ALLEGATIONS**

1) Beginning Summer 2019 and continuing to the present, Plaintiffs were subjected to a continuous and pervasive pattern and practice of racial harassment and discrimination despite each performing and/or having performed their job with high levels of skill, dedication, and success.

2) Nonetheless, they have each been discriminated against by Defendant employer, Dreamwear and its Human Resources team (HR) because of their gender with respect to the terms and conditions of their employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., and as to Plaintiffs.

3) Defendants claim to have anti-discrimination policies and procedures that are supposed to apply to all employees. However, Defendant's failure to enforce its own policies and follow its own procedures fostered and promoted an environment of racial discrimination and retaliation.

4) As a result of these practices, the statistical evidence available to Plaintiffs as of December of 2021, supported the Plaintiff's assertion that women will remain functionally, financially, subordinate to men, and that black women, will be fixed at the bottom of that hiearchary. So thorough a system that the official employee holiday card shows not an apparently brown or black face.

5) The following race and gender breakdown in employment at certain leadership positions at the Company: 200 Employees,  Executive level [0 black/~10]; Designer and CAD team [0 black/~15];

6) Named plaintiffs have experienced race discrimination and retaliation, including but not

**AMENDED**

limited to the following:

7) In July 2019, at a company event, an employee named Michael told another black employee, Elizabeth L that she "looked like Aunt Jemima." She, and other "nappy-headed' black women were for weeks the subject of whispers, laughs, jeers and outright sneers.

8) Several witnesses, including HR and owners, witnesses this event and did nothing to adress the pain, humiliation, embarrassment and discomfort that stained that environment after the statement was made.  Who could work in such stench?

9) Even after separating these victims of the offense, colleagues gossip, and it was known that all women of conscience were offended.  Defendants did not investigate.

10) Instead, guests at one of the company functions in summer 2019 bemoaned the potential consequences of being unable to "make black jokes anymore" at work.  Witnesses abound, including former HR supervisors, including Mekenna Sigai, recognized the embarrassment and discomfort  it caused to black women employees, and for reasons that will onl be made evident in discovery, were unable or unwilling to redress.

11) After the statements described above, a series of subtle but targeted aggressive comments and advances were made by male employees towards the Named Plaintiffs, led mainly by employee Lee Sik Kim, who brazenly confronted Plaintiffs at their desks to berate, harass , and belittle them, and in notable instances, concoct easily debunked falsehoods about their activities and report same to HR.  He would routinely interrupt private meetings to launch into tirades about their presence on their team, but was always courteous to white and male employees.

12) On or about May 2019, a female peer of the named plaintiffs, India Graham,  also reported to HR a persistent stream of racist behavior and racial slurs of a peer named Howie.

13) After each such incident, Plaintiff reported Kim's conduct as workplace bullying, or sexual harassment and racial bias, and to HR. Despite Plaintiffs reporting this incident and naming

**AMENDED**

as a witness the Director of the Design group, HR failed to investigate their allegations of sexual harassment and sexual discrimination.

14) In September 2019, plaintiff Robertson contacted Mekenna Sigai, then the HR Director at Dreamwear, copying, Rebecca Thorton, to report that employee Kim had acted inappropriately towards her and other women.

15) In response, HR said it had "investigated" and found no evidence of unlawful discrimination or harassment, yet, still took the step of moving Kim to another floor.

16) LIke Named PLaintiffs, Ms. Graham was retaliated against for reporting racist incidents by being summarily denied an internal transfer that she had sought for three years, in the Design Group, and despite glowing reviews at each year-end assessment, and a promise in 2018 for bona fide consideration for open positions, she was told no roles were available yet on the website Indeed.com, the job description matched the role she sought.

17) When her friends investigated and learned the roles were going to outside hires with less experience but non-black skin,  defendants had ready a series of excuses for the fact that not one person in the design group was black.

18) Ms. Graham, like plaintiffs, received markedly less-glowing performance reviews after escalating their concerns.

19) However, when 2020 a white employee reported that Plaintiff Desire had been, in their opinion, less than cordial to her over a series of interactions, HR took the extraordinary effort to discipline Plaintiff Desire, and suggest that her continued employment would be jeopardized if she did not show deference, smile, and nod to said peer employee, despite the toxicity plaintiff was forced to wade through every second of every minute of every day within that environment.

20) Because of defendant's negligence, employees continued to mistreat Plaintiffs and unfairly scrutinize females in the workplace. In one notable incident, an employee named Diana was

**AMENDED**

targeted for aggressive harassment by Kim, who pulled her out of a meeting with Plaintiffs and screamed at her. She returned to the meeting room visibly shaken and upset, retelling the offensive conduct that she had experienced to the named plaintiffs.

21) Fed up with the inaction, in February 2020, Plaintiffs took vacation time off from work report their grievances to attorneys within in New York's City's Commission on Human Rights about the persistent stream of racist behavior and racial slurs coming from peers, naming individuals at Dreamwear.

22) On information and belief, that attempt to seek legal relief was relayed to defendants, because life at work became unbearable, and after the COVID 19 pandemic started, plaintiffs' physical health was also threatened, as described herein and as will become evident during discovery and at trial.

 COUNT 1

## **Violation of Equal Pay Act of 1963 (Pub. L. 88-38) (EPA), as amended**

23) No employer … shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

24)  To bring a claim under the EPA, an employee must show that a female employee and a male employee are receiving different wages for performing substantially equal work in the same establishment and under similar working conditions.

25) Plaintiffs have repeatedly been denied advancement despite positive performance reviews,

**AMENDED**

and their compensation is appreciably lower than males in performing similar roles within the organization.

26) As a direct foreseeable and proximate result of defendants discriminatory acts, Plaintiffs have suffered irreversible losses in earnings, job benefits and employability.

## COUNT 2
## HOSTILE WORK ENVIRONMENT

27) Plaintiff incorporates by reference each of the above paragraphs as if set forth herein at length.

28) "[O]ne incident of harassing conduct can create a hostile work environment," so long as the incident was "severe or pervasive." The applicable standard is that of a reasonable person in the plaintiff's position.

29) Here, Plaintiffs outlined a series of covert and severe discriminatory conduct, detailing a continuous and pervasive pattern and practice of racial harassment and discrimination by Dreamwear employee, Lee Sik Kim and Howie, who routinely and without consequence launch into tirades against Plaintiffs, use racial slurs, otherwise practice workplace bullying, or sexual harassment and racial bias, and to HR.

30) Despite Plaintiffs reporting this incident and naming witnesses, Defendants personnel negligently or intentionally failed to investigate allegations, fostered and tolerated a culture that permitted racially offensive jokes and slurs, like calling women Aunt Jemimas, or about riding elevators with LatinX people.

31) Because of Defendant's actions, Plaintiffs have used vacation days to seek mental health professionals.

32) Each of the named plaintiffs were compelled to escape the hostile treatment by separating from the Company for their physical and mental well-being.

33) Even after expressing her intent to separate, Plaintiff learned that Defendant sent disparaging

## AMENDED

comments in written form to staff and third parties.\

34) Despite supervisors and directors aware of improper conduct by employees—as evidenced by email communications and letters from legal counsel advising them of potential liability for continued violations as recently as March 2021, the Franco Brothers and HR made no effort to discipline the offenders and in some cases, continued to engage in that same conduct themselves, for which vicarious liability should be found.

35) Defendants further selectively enforced COVID-19 preventative measures, and repeatedly confined plaintiffs to unsanitary, jail cell-sized windowless "lightrooms" on floors with known outbreaks of COVID-19, for hours at a time, while providing sanitized, ventilated rooms for males, non-blacks, and others who did not raise concerns.

## COUNT 3

## RETALIATION

36) Plaintiffs incorporate by reference each of the above paragraphs as if set forth herein at length.

37) Plaintiffs complained to HR about harassment by Kim, Howie, and others, and bemoaned treatment by supervisors, including Maria Krum, about the discriminatory employment practices, and faced in response denial of advancement, overlooked for opportunities, and compelled to sign agreements affirming falsely that they had no suffered harassment or discrimination, and  agreements to waive statutory remedies.

38) Plaintiffs reported Defendants conduct to New York State's Human Rights commission on February 26, 2020,  and on information and belief, that their visit was made known to the Defendants.

39) In March 2021,  legal counsel contacted Defendants to commence an investigation into

## AMENDED

Plaintiffs allegation and to preserve all electronic data relevant to a potential suit.

40) Shortly after sending these notes, Defendants increased the level of hostilities against Plaintiffs, asking them to do more work, in less time, and scrutinizing their work with peculiar intensity.

41) In 2021, despite receiving warnings Plaintiff's counsel to cease and desist its unlawful behavior, Defendants retaliated against Plaintiffs by selectively enforcing COVID-19 preventative measures, including: confining plaintiffs to work for hours in windowless rooms on floors with known outbreaks of COVID-19, causing such stress and anxiety that at least one Plaintiff felt compelled to separate.

42) Defendants even reassigned the Defendants and further , compelled them to work in close, unwindowed quarters at the height of a COVID 19 outbreak within their workplace.

43) Defendants' retaliation violated applicable laws against retaliation and decency.

44) As a direct, foreseeable and proximate result of acts, plaintiffs have either been force to quit, as of March 2021—not one of the plaintiffs remains employed with defendant.

## COUNT 4

## RETALIATION  (NJLAD)

45) Plaintiffs incorporates by reference each of the above paragraphs as if set forth herein at length.

46) To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that:

47) she was engaged in a protected activity known to the Defendant(s); (2) she was subjected to an adverse employment action by the defendant; and (3) there was a causal link between the two.

48) Plaintiff bears a "modest" evidentiary burden of showing that retaliation "could be a reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).

49) After the plaintiff establishes a prima facie claim of retaliation, the burden shifts to the

## AMENDED

defendant to "'articulate a legitimate, non-retaliatory reason for the decision.'" Young v. Hobart W. Grp., 385 N.J. Super. 448, 465 (App. Div. 2005) (quoting Romano, supra, 284 N.J. Super. at 549). Thereafter, the plaintiff must prove that the defendant had a discriminatory motive, and that its proffered reason for the adverse employment action was merely a pretext for unlawful retaliation. Romano, supra, 284 N.J. Super. at 549.

50) In this case, plaintiffs presented evidence that, beginning they filed complaints with Dreamwear, and with state agencies alleging  unlawful discrimination in the terms or conditions of their employment, which is a protected activity under the NJLAD. N.J.S.A. 10:5-12(a) and (d), Plaintiffs were compelled to sign documents that falsely averred that they had suffered no discrimination or harassment in 2020, to accept as resolved the findings of sham investigations, and were denied promotions, refused transfers and denied bonuses earned  despite strong performance reviews.

51) As a direct foreseeable and proximate result of defendants retaliatory acts, Plaintiffs have suffered irreversible losses in earnings, job benefits and employability.

## COUNT 5

## DEFAMATION

52) Plaintiffs incorporate by reference each of the above paragraphs as if set forth herein at length.

53) Defendants made a defamatory statement of fact concerning the Plaintiff Desire's separation—claiming that plaintiff Desire had quit abruptly and left her co-workers in a lurch and causing the business to suffer—despite knowing that she had provided notice-- with the help of counsel—that fully complied with the company's handbook—, and communicated this falsehood to other employees and persons other than the Plaintiff.

## AMENDED

54) Defendants committed the acts described in this complaint oppressively, willfully and maliciously.

55) As a direct, foreseeable and proximate result of defendant's defamatory statements, Plaintiff Desire has suffered damages and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort. These

## **COUNT 6**

### **Unlawful Discrimination**

### **42 U.S.C. § 1983**

56) Section § 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the US or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

57) Dreamwear's arbitration clause interferes and/or hinders employees from exercising their right to sue Dreamwear for claims of unlawful discrimination. As stated in § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State… to sue….".

58) As a direct, foreseeable and proximate result of defendant's acts, plaintiff's statutory rights were violated.

## **COUNT 7**

### **42 U.S.C. § 2000e-2 Unlawful Employment Practices**

59) Plaintiffs incorporates by reference each of the above paragraphs as if set forth herein at length.

## **AMENDED**

60) It shall be an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

61) An unlawful employment practice based on disparate impact is established only if – (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.

62) As a direct, foreseeable and proximate result of defendants' discriminatory acts, Plaintiffs suffered and continue to suffer substantial losses in earnings, job benefits and has suffered and continue to suffer humiliation, embarrassment, mental and emotional distress and discomfort.

63) Defendants committed the acts described in this complaint oppressively, willfully and maliciously, entitling Plaintiffs to an award of punitive damages against defendants.

## **COUNT 8**

### **NEW JERSEY LAW AGAINST DISCRIMINATION (NJLAD), N.J.S.A. 10:5-1 TO -**

64) Plaintiffs incorporate by reference each of the above paragraphs as if set forth herein at length.

65) New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., "prohibits discrimination against a person in the terms, conditions or privileges of employment on the basis of the person's gender, race, age and handicap and reprisals for complaints of discrimination and public policy matters..."

66) Defendants individually, jointly and conspiratorially engaged in acts which were negligent,

**AMENDED**

recklessly intentional and malicious.

67) Plaintiffs suffered disparate treatment, disparate impact, discriminatory intent, a pattern and practice of discrimination, hostile work environment and evidence of hostility by employers or agents, including Maria Krum, and Mr. Kim.

68) Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

69) At all times, plaintiffs reported to Defendants.

70) Each of these actions, among others, affected plaintiffs ability to work comfortably.

71) Defendants caused Plaintiffs discomfort accompanied by anxiety because they were black women.

72) As a direct foreseeable and proximate result of defendants discriminatory acts, Plaintiffs have suffered irreversible losses in earnings, job benefits and employability.


**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

judgment in Plaintiff's favor and against Defendants on all Counts, and,

Compelling defendants to respond to Plaintiffs Discovery Demands served on defendants on January 4, 2022, and attached herein,  together with compensatory and equitable relief, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.


**AMENDED**

By:  /s/ Kwame L.A. Dougan

March 11, 2022

**Scotch & Palm Private Client Law Group, LLC**

Kwame L.A. Dougan, Esq.

Scotch & Palm Private Client Law Group

141 Harris Rd. Princeton NJ 08540

(917)737-9920

kwame.dougan@scotchpalm.com

Attorneys for Plaintiffs

**AMENDED**

**<u>AMENDED</u>**

<u>CERTIFICATE OF SERVICE</u>

KWAME L.A. DOUGAN, of full age, certifies and says:

1.      On March 11, 2022, I electronically filed the Amended Complaint..

2.      All parties affected by this First Amended Complaint  receive electronic service of all

filings and therefore all parties will receive a copy of the Amended Complaint.

I certify that the foregoing statements I made are true under penalty of law.

By:  /s/ Kwame L.A. Dougan

Kwame L.A. Dougan, Esq.

Dated: March 11, 2022

Respectfully submitted,

Scotch & Palm Private Client Law Group, LLC

By:  /s/ Kwame L.A. Dougan

Kwame L.A. Dougan, Esq.

Scotch & Palm Private Client Law Group

141 Harris Rd. Princeton NJ 08540

(917)737-9920

kwame.dougan@scotchpalm.com

Attorneys for Plaintiff(s)

**<u>AMENDED</u>**



**AMENDED**



**AMENDED**



Law + Strategy USA

## NOTICE TO PRESERVE - DREAMWEAR

_For settlement purposes only_

KWAME L.A. DOUGAN, ESQ.
SCOTCH & PALM PRIVATE CLIENT LAW GROUP, LLC
3979 Albany Post Road #2018
Hyde Park, NY 12538
(917) 737-9920
Majic@scotchpalm.com

Joseph Franco, Founder and Principal
DREAMWEAR INC.
183 Madison Ave 10th Fl.
New York, New York,
10016
jfranco@dreamwear.com

Via E-mail and USPS

Date: February 22, 2021

Subject: Pre-Dispute Notice to Preserve Electronic Evidence and Disclose Coverage in anticipation of litigation.

Dear Joseph,

I write as legal counsel representing employees of DREAMWEAR INC ("DreamWear" or "you"). My clients preparing to sue DreamWear for its a pattern and practice of unlawful discrimination in the _making, performance, and modification_ of employment contracts, causing substantial emotional and financial damage.

> _You are to immediately preserve electronically stored information that may contain evidence important to the above legal matter required under penalty of law. see Exhibit A._

My clients represent a putative class of employees that allege that, DreamWear, as an employer, systematically and unlawfully:

- 1 -          www.scotchpalm.com | (t) 917-737-9920 | Kwame.dougan@scotchpalm.com
Mailing Address: 3979 Albany Post Road #2018 | Hyde Park, NY 12538

**AMENDED**

- Paid protected classes of employees less than it paid to groups of employees who are not members of the protected class for substantially similar work.
- Took adverse employment action against Plaintiffs because they belong to a protected class,
- Maintained a Hostile Environment by ignoring Plaintiffs' documented claims of sexual harassment, and
- Retaliated against them for whistleblowing about the above actions.
- Failed to comply with COVID-19 related workplace safety guidelines.

**Settlement Opportunity**

To mitigate further emotional and financial tolls to my clients, and to avoid the costly impact that a high-profile litigation may bring, settlement may be appropriate.

Plaintiffs are prepared to consider a fair settlement offer. Please contact me within 14 days of receiving this notice to discuss this possibility.   The aforementioned notwithstanding, Plaintiffs reserves all its rights under this notice.

You may contact me if you have questions by email or phone: **917-754-0181**

Sincerely,

Yours truly,
     /s/

Kwame L. Dougan, Esq. [1]
Kwame.dougan@scotchpalm.com

Cc:
*For settlement purposes only*

---

[1] Qualified in New York and New Jersey

**AMENDED**

**<u>AMENDED</u>**